UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| NICK SANTOS,<br>        Appellant, | DOCKET NUMBER<br>SF-0752-20-0114-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br>  SECURITY,<br>        Agency. | DATE: August 18, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Edward J. Southcott, Esquire, and Richard L. Pinckard, Esquire, San
    Diego, California, for the appellant.

Diana Mondragon, Chula Vista, California, for the agency.

Julianne Kelly-Horner, San Diego, California, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 60-day suspension. For the reasons

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

discussed below, we GRANT the petition for review and REVERSE the initial decision. The removal action is SUSTAINED.

## DISCUSSION OF ARGUMENTS ON REVIEW

We deny the appellant's request to order compliance with the interim relief order and/or dismiss the agency's petition for review.

¶2 In her initial decision, the administrative judge ordered the agency to provide interim relief under 5 U.S.C. § 7701(b)(2)(A) in the event a petition for review was filed by either party. Initial Appeal File (IAF), Tab 31, Initial Decision (ID) at 19-20. The Board's regulations provide that when, as in this case, the appellant was the prevailing party in the initial decision and the decision granted the appellant interim relief, any petition or cross petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order. 5 C.F.R. § 1201.116(a). If the agency files a petition or cross petition for review and has not provided the interim relief ordered, the appellant may request dismissal of the agency's petition. 5 C.F.R. § 1201.116(d). If the agency fails to demonstrate compliance with the interim relief order, the Board has discretion to dismiss the agency's petition pursuant to 5 C.F.R. § 1201.116(e), but is not required to do so.

¶3 Here, the agency's petition for review was accompanied by declarations by a management official and a payroll accountant, purportedly certifying the agency's compliance with the interim relief order. Petition for Review (PFR) File, Tab 1 at 24-25. The appellant challenged the agency's certification, arguing that he had not in fact received interim pay and benefits.[2] PFR File, Tab 3. He requested that the Board order the agency to comply with the interim

---

[2] Upon receiving the appellant's challenge to the agency's certification, the Board should have issued an order providing the agency an opportunity to submit evidence of compliance. 5 C.F.R. § 1201.116(b). It is unnecessary to issue such an order now, as the agency has already responded to the appellant's challenge, and the issue of compliance can be resolved on the basis of the existing record. *See Buckler v. Federal Retirement Thrift Investment Board*, 73 M.S.P.R. 476, 483 (1997).

relief order, and/or dismiss the agency's petition. *Id.* at 6; *see also* PFR File, Tab 5 at 7-8. In response, the agency argued that it had taken "appropriate administrative action" to ensure that the appellant receives interim pay and benefits, and that this was sufficient for compliance. PFR File, Tab 4 at 5-8. The agency further explained that the appellant is on administrative leave status because it has determined that his return to the workplace would be unduly disruptive. *Id.* at 9-12; *see* 5 U.S.C. § 7701(b)(2)(A)(ii), (B). The agency subsequently provided evidence that, as of September 21, 2020, approximately 3 weeks after the petition for review was filed, the appellant had received pay and benefits in accordance with the interim relief order. PFR File, Tab 6 at 14-18.

¶4      We deny the appellant's request to order compliance with the interim relief order, as there is no authority that provides for filing such a request. *See Dean v. Department of the Army*, 57 M.S.P.R 296, 300 (1993). We further find that interim pay and benefits were not unreasonably delayed, and that the agency complied with the interim relief order. *See Buckler v. Federal Retirement Thrift Investment Board*, 73 M.S.P.R. 476, 483-84 (1997); *Salazar v. Department of Transportation*, 60 M.S.P.R. 633, 639 (1994). Accordingly, we deny the appellant's request to dismiss the agency's petition for review.

The appellant did not contest the charge of conduct unbecoming a Supervisory Border Patrol Agent.

¶5      The agency based its charge of conduct unbecoming on the following specification:

> On September 2, 2018, while off-duty, the San Diego Police Department (SDPD) found you uncooperative, argumentative, and you appeared to be intoxicated. SDPD detained and transported you to McAlister Institute Inebriate Reception Center (MHRC). You admitted to Customs and Border Patrol (CBP) Office of Professional Responsibility (OPR) investigators you had consumed approximately seven (7) alcoholic beverages throughout the day.

IAF, Tab 7 at 73.  The appellant does not dispute this charge, and acknowledges that he engaged in conduct unbecoming a supervisor.  Hearing Transcript (HT) at 174.

¶6      On review, the appellant asserts that the administrative judge mischaracterized the testimony of the SDPD officer when she stated that the officer "could not identify the point at which the appellant was uncooperative or argumentative."  PFR File, Tab 1 at 22-23; *see* ID at 8 n.2.  However, as the administrative judge went on to explain, it was unnecessary for her to decide whether the appellant was uncooperative or argumentative, because the appellant did not dispute that he engaged in conduct unbecoming during the interaction.  ID at 8 n.2.  As the charge is uncontested, the alleged error does not affect the result, and therefore does not require further review.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

The charge of lack of candor is sustained.

¶7      To prove a charge of lack of candor, the agency must prove that (1) the appellant gave incorrect or incomplete statements, and (2) did so knowingly. *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶17 (2016).  Unlike falsification, lack of candor does not require an intent to deceive.  *Id.*, ¶ 16. A lack of candor charge may involve a failure to disclose something that, under the circumstances, should have been disclosed in order to make the given statement accurate and complete.  *Ludlum v. Department of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002).

*Specification 1*

¶8      In the first specification, the agency alleged the following:

 On September 2, 2018, while off-duty, you were examined by Emergency Medical Services (EMS).  SDPD arrived at the scene and told EMS that if EMS cleared you, then you would be going with SDPD.  Shortly thereafter, an EMS employee asked you if you had any pertinent health history that you should know about.  You said

you were a type (1) diabetic. In your interview with CPB OPR investigators, you stated you were not diabetic.

IAF, Tab 7 at 73. It is undisputed that the appellant gave EMS incorrect information when he stated that he was a type 1 diabetic. *See* IAF, Tab 18 at 9, Tab 21 at 22 (stipulating that the appellant has never had diabetes). The administrative judge found, however, that, because the appellant was so intoxicated the police found it necessary to take him to a detox facility, it was "as likely as not that the appellant did not knowingly make a misstatement." ID at 10-11.

¶9     We disagree. The agency has provided the SDPD officer's body camera footage from the incident, which records the following dialog between the appellant and one of the EMS paramedics:

Paramedic: Do you have any pertinent past medical history we should know about, like say, diabetes, high blood pressure?

Appellant: Diabetes, high blood pressure.

Paramedic: You are a diabetic?

Appellant: Yes.

Paramedic: What type of diabetic are you?

Appellant: Type 1.

Paramedic: What do you take, [what] medicine?

Appellant: Nothing.

Paramedic: So you're a type 1 diabetic who takes no medication whatsoever?

Appellant: Correct.

Paramedic: I don't think I've ever met anyone who does that. Do you know any medications that you're supposed to be taking?

Appellant: Uh, metformin.

Paramedic: Okay, type 1 diabetics don't usually take metformin.[3]

IAF, Tab 8, 647f-file 2, at 3:07-3:44.

¶10      It is clear from this exchange that, more likely than not, the appellant knowingly gave incorrect information to EMS. We have considered the appellant's theory that, in his intoxicated state, he simply parroted the words "high blood pressure, diabetes." HT at 177 (closing statement). However, while that might plausibly account for the appellant's initial response to the paramedic's inquiry, it does not explain why he would have gone on to state that he was a type 1 diabetic and that he was taking metformin for that condition. Though untrue, these statements were directly responsive to the paramedic's questions and were not nonsensical or merely repetitive. Moreover, while the SDPD officer who arrested the appellant outside the bar may have judged the appellant unable to exercise care for his safety or the safety of others, *see* Cal. Penal Code § 647(f), this does not imply that the appellant was too intoxicated to understand that his later statements to the paramedics were incorrect. On the probable cause form, the arresting officer checked only 5 of the 21 signs and symptoms indicating the appellant was under the influence of an intoxicant, *see* IAF, Tab 7 at 105, and the police camera video taken before and during the appellant's encounter with EMS does not show that the appellant was incoherent, showing signs of difficulty processing information, or struggling to speak clearly. Lastly, the fact that the appellant had a clear incentive to remain in the care of EMS, instead of being returned to police custody, lends further support to a finding that he knowingly misinformed EMS that he had a condition that could require further medical treatment. Based on the above considerations, we sustain the specification.

---

[3] We take official notice under 5 C.F.R. § 1201.64 that metformin is prescribed to treat type 2 diabetes. *See* https://medlineplus.gov/druginfo/meds/a696005.html (last visited Feb. 17, 2023).

*Specification 2*

¶11        In the second specification, the agency alleged the following:

> On September 2, 2018, while off-duty, EMS determined that you did not need to go anywhere by ambulance and you did not need EMS treatment after they examined you.  Next, an SDPD Officer handcuffed you and stated he had no other choice but to book you into county jail.  While in SDPD custody, you stated that you believed you had a heart condition at that time, and SDPD acknowledged your heart condition.  An SDPD Officer asked if you felt that way because of the position you were in or because there was something medically wrong with you.  You answered that you would like to see a doctor.  Consequently, you were released by SDPD to EMS for further medical evaluation at University of California San Diego Hospital in Hillcrest, via ambulance.  Thereafter, when you were advised by EMS you were not in SDPD custody, you chose to go home rather than seeing a doctor or admitting yourself to a hospital.

IAF, Tab 7 at 73.

¶12        Body camera footage of the incident shows that, after the appellant was cleared by EMS and returned to police custody, the following exchange occurred:

> Officer:  Do you think there's something wrong with your heart?
>
> Appellant:  Yes sir.
>
> Officer:  Yes, you think there's something wrong with you?
>
> Appellant:  Absolutely, yes sir.
>
> Officer:  Would you like to go to the hospital?
>
> Appellant:  Yes sir.
>
> Officer:  Are you going to give these medics any problems?
>
> Appellant:  No sir.
>
> Officer:  Step out of the vehicle.  [Appellant exits vehicle.]
>
> Officer:  And what is it you think is wrong with you?
>
> Appellant:  My heart's beating very very fast.
>
> Officer:  Okay, that's not totally abnormal.  Do you have a heart condition?
>
> Appellant:  I believe I do right now, sir.

> Officer:  Is it because of the position you're in, or do you think there's something medically wrong with you?
>
> Appellant:  I'd like to see a doctor, sir.

IAF, Tab 11, 647f, at 2:02- 2:38.

¶13     We agree with the administrative judge that the agency has not shown by preponderant evidence that the appellant gave incorrect or incomplete information during this exchange.  It is undisputed that the appellant has a history of panic attacks, IAF, Tab 18 at 9, and while EMS found the appellant's heart rate and blood pressure were normal at the time of his initial evaluation, the record does not contain medical evidence concerning the appellant's condition at the time he reported symptoms to the SDPD officer.  It is true that, regardless of his actual condition, the appellant would have had incentive to state that he was unwell so that he would be taken to the hospital instead of jail.  Nonetheless, we cannot determine from the record whether the appellant may have developed a real or perceived heart condition following his return to police custody.  Accordingly, we affirm the administrative judge's finding that the agency failed to prove this specification.

> *Specification 3*
>
> In its third specification, the agency alleged the following:
>
> On December 12, 2018, during your interview with CBP OPR investigators, you claimed you felt like you were having a panic attack on September 2, 2018, but you omitted to EMS and SDPD that you felt like you were having a panic attack, nor did you answer that you suffered from panic attacks when asked specifically about your health.

IAF, Tab 7 at 74.  Although the agency placed these allegations under a single specification, the agency appears to allege here that the appellant knowingly gave incomplete information on two occasions:  first, in his statements to EMS, and second, in his separate statements to the SDPD officer.

¶14      We first address the appellant's statements to EMS. As noted above, the EMS paramedic specifically asked the appellant if he had "any pertinent past medical history we should know about," and offered high blood pressure and diabetes as examples. Under those circumstances, the appellant should have disclosed his history of panic attacks, and by failing to do so, he gave EMS incomplete information. However, considering that the appellant was intoxicated and may have been distracted by the paramedic's specific mention of high blood pressure and diabetes, it is as likely as not that the appellant forgot to mention his history of panic attacks and did not knowingly conceal that information.

¶15      We also find that that the agency has also not shown that the appellant exhibited lack of candor by failing to inform the SDPD officer of his history of panic attacks. In this case, the agency has not shown that the appellant gave incomplete information, knowingly or otherwise. The officer did not specifically ask the appellant about his medical history, and we do not see how, under those circumstances, it was incumbent on the appellant to attempt a self-diagnosis. We therefore do not sustain the specification.

¶16      In sum, we sustain specification 1 of the lack of candor charge, and do not sustain specifications 2 and 3. When more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). Accordingly, the charge of lack of candor is sustained.

<u>The administrative judge correctly found that the agency failed to prove the charge of misuse of position.</u>

¶17      The agency based its third and final charge on a single specification, as follows:

> On September 2, 2018, while off-duty, you interfered with the SDPD as they were questioning your friend. An SDPD officer stated that he could not leave your friend in her condition. Then, you told officers they had discretion whether to detain her.

IAF, Tab 7 at 74.  We agree with the administrative judge that the agency failed to prove the charge.

¶18  In the hearing order, the administrative judge cited *Mann v. Department of Health and Human Services*, 78 M.S.P.R. 1, 8 (1998), for the proposition that, in order to prove a charge of misuse of position, the agency must prove that the appellant misused his position for private gain, and that the charge cannot be sustained if no gain has been shown.  At the prehearing conference, the agency argued that *Mann* was not the applicable precedent, and that under *Burkett v. General Services Administration*, 27 M.S.P.R. 119, 121 (1985), it was only required to show that the appellant used his office with the *purpose* of obtaining private gain, regardless of whether he actually benefited.  IAF, Tab 25 at 3.  In her summary of the prehearing conference, the administrative judge stated that he agreed with the agency's argument and would apply the standard set forth in *Burkett*.  *Id.*  In the initial decision, however, the administrative did not apply *Burkett*, but again cited *Mann* as the controlling precedent.  ID at 7-8.

¶19  The agency correctly observes that the administrative judge's reliance on *Mann* was inconsistent with her prior ruling.  However, to the extent the administrative judge may have erred by relying on *Mann* rather than *Burkett*, the error is of no consequence, because the agency has not shown that the appellant used his public office for the purpose of obtaining private gain, successfully or otherwise.  Body camera footage of the incident shows that the appellant identified himself as "law enforcement" in the context of arguing that the SDPD officers had "discretion" to refrain from taking one of his companions to the detox facility.  IAF, Tab 11, AXON_Body_2_Video_2018-09-02_2234, at 3:30-3:42.  In addition, the SDPD officer acknowledged in his testimony that the appellant did not state "I'm a cop; give my friend a break," or otherwise ask for professional courtesy.  HT at 74.  Given these facts, we find it more likely than not that the appellant identified himself as a law enforcement officer for the purpose of claiming expertise on police procedures, and not for the purpose of

obtaining favorable treatment. Because the agency has not shown by preponderant evidence that the appellant used his public office for the purpose of obtaining private gain, we agree with the administrative judge that the agency failed to establish the charge.

The agency proved nexus.

¶20 An agency may show nexus between off-duty misconduct and the efficiency of the service by three means: (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission. *Hoofman v. Department of the Army*, 118 M.S.P.R. 532, ¶ 16 (2012), *aff'd*, 526 F. App'x 982 (Fed. Cir. 2013). In this case, the agency has provided evidence that the appellant's off-duty conduct adversely affected its trust and confidence in the appellant's ability to serve as a Supervisory Border Patrol Agent. *See* HT at 148-49 (testimony of the deciding official). We discern no error in administrative judge's finding that the agency established nexus, and the appellant does not contest that finding on review.

The penalty of removal is within the bounds of reasonableness.

¶21 When the Board sustains fewer than all of the agency's charges, the Board may mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). The agency has not so indicated. Accordingly, we will consider whether the agency's chosen penalty of removal is within the bounds of reasonableness for the sustained misconduct.

¶22 In evaluating the reasonableness of a penalty, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relation to

the employee's duties, positions, and responsibilities, including whether the offense was intentional or was frequently repeated. *Saiz v. Department of the Navy*, 122 M.S.P.R. 521, ¶ 11 (2015). A higher standard of conduct and a higher degree of trust are required of an incumbent of a position with law enforcement duties. *Luongo v. Department of Justice*, 95 M.S.P.R. 643, ¶ 13 (2004), *aff'd*, 123 F. App'x 405 (Fed. Cir. 2005) (Table). Moreover, agencies are entitled to hold supervisors to a higher standard than nonsupervisors because they occupy positions of trust and responsibility. *Edwards v. U.S. Postal Service*, 116 M.S.P.R. 173, ¶ 14 (2010). As the administrative judge observed, the sustained charge of conduct unbecoming is by itself a serious offense, especially considering the involvement of the local police department, which is a necessary partner of the Border Patrol. ID at 15; *see* HT at 145 (testimony of the deciding official). Furthermore, as we have found here, the appellant compounded that offense by knowingly providing incorrect information to other first responders.

¶23     We have considered relevant mitigating factors, including the appellant's length of service, his record of performance-based awards, and the rehabilitative potential evidenced by his willingness to admit to conduct unbecoming. However, considering that the sustained charge of lack of candor could potentially result in the appellant's *Giglio* impairment,[4] it is doubtful that an alternative sanction, such as a suspension or demotion to a nonsupervisory law enforcement position, would be a viable option in this case. We find that the penalty of removal is within the bounds of reasonableness, and we therefore sustain it.

---

[4] In *Giglio v. United States*, 405 U.S. 150, 154 (1972), the Supreme Court held that the Government must disclose evidence affecting the credibility of Government witnesses. Subsequent case law has extended this rule to require Government agencies to review the personnel files of Government witnesses and disclose material that could cast doubt on their credibility or potential for bias. *See United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991).

**NOTICE OF APPEAL RIGHTS**[5]

This is the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:            /s/ for

                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.